# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

CEDO HEALTH, LLC,                                             Case No. 24-29

CEDO WALLET, LLC, and

CEDO WALLET TECHNOLOGIES, LLC

       Plaintiffs,

v.

DAVID GRIFFIN, an individual, and

CAREY LEE GUTHMILLER, an individual,

       Defendants.

## AMENDED COMPLAINT

COME NOW Plaintiffs, Cedo Health, LLC ("Cedo Health"), Cedo Wallet, LLC ("Cedo Health"), and Cedo Wallet Technologies, LLC ("Cedo Tech") (collectively the "Cedo Companies"), pursuant to Fed. R. Civ. P. 15(a)(1)(b) and for their Amended Complaint against Defendants David Griffin ("Griffin") and Carey Lee Guthmiller ("Guthmiller") state as follows:

**I.    PARTIES**

1. Cedo Health is a Delaware limited liability company organized on March 2, 2023, with a principal office address of 142 Abbey Dr., Royersford, PA, 19468.

2. Cedo Wallet is a Delaware limited liability company organized on January 1, 2023 with a principal office address of 924 A Caruthers, Nashville, TN 37204.

3. Cedo Tech is a Delaware limited liability company organized on March 3, 2023 with a principal office address of 124 Abbey Dr., Royersford, PA, 19468.

4. David Griffin is an individual residing at 11106 William Plaza, Omaha, NE 68144 and

is the husband of Guthmiller.

5. Cary Lee Guthmiller is an individual residing at 11106 William Plaza, Omaha, NE 68144 and is the wife of Griffin.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this cause of action under the federal Defend Trade Secrets Act, and pendant jurisdiction over the state law causes of action under 28 U.S.C. §1367.

7. The residence of the limited liability companies that are plaintiffs in this cause of action are based upon the residences of the members of the limited liability companies that are: Shane Zilinskas, a resident of Tennessee, Keith Miller, a resident of Pennsylvania, and David Griffin, a resident of Nebraska.

8. Venue is proper in this Court as a significant portion of the acts complained of took place in this venue, including but not limited to the receipt, use, and dissemination of trade secrets in the District of Nebraska as well as the receipt of misappropriated funds in this District by Griffin and Guthmiller.

## FACTS

9. Cedo Health is a limited liability company that was formed in March, 2023 for the purpose of providing healthcare products, medications, and technology for individuals, businesses, universities, and health care providers.

10. Cedo Wallet is a limited liability company that was formed in January, 2023 for the purpose of providing financial technology solutions for university athletic programs, collectives, and student athletes.

11. Cedo Wallet Technologies is a limited liability company that was formed in March, 2023.

12. Griffin is an individual and was a founding member of Cedo Health, Cedo Wallet, and Cedo Tech, and is a resident of Omaha, NE.

13. Guthmiller is an individual who, at all times pertinent to this cause of action, has been married to Griffin and is a resident of Omaha, NE.

14. Zilinskas and Miller were interested in developing a business plan to acquire and operate and ongoing business called "The Players Wallet." In that context, in or around August of 2022, Miller was introduced to Griffin by a third party as someone who could assist in raising capital for The Players Wallet project. Griffin misrepresented his resources and ability to raise capital, in particular lying about his own financial condition and resources as well as his experience and contacts related to raising capital for the project. Griffin also misrepresented his sports background providing gateway into Arizona State by claiming he had played football at Arizona State. He never played college sports there or anywhere.

15. When The Players Wallet project failed to come to fruition, in large part due to Griffin's failure to take any effective steps to raise capital as Griffin had promised, Zilinskas, Miller, and Griffin began plans to develop the ongoing technology and business that would become the Cedo Companies.

16. During those discussions, Griffin continued to misrepresent his experience, financial situation, and ability to raise capital for the Cedo Companies including misrepresenting his ability to pay for debts owed by The Players Wallet.

17. In particular, Griffin represented to the Cedo Companies' other officers Shane Zalinski and Keith that he had particular experience with college sports – one large targeted group of potential clients for the Cedo Companies' with particular needs met by the Cedo Companies' technology and business model – in that he had played college sports and had specific contacts within that potential client community.  He represented to Plaintiffs that he had been part of the Arizona State University roster for football.

18. In reality, Griffin not only did not have any such experience, but he had never even played sports in college.

19.  At the outset, the Cedo Companies were intended start with a Name, Image, and Likeness ("NIL") tracking platform for transactions of college athletes obtaining endorsement contracts and providing means for reporting those endorsements to the athletes' home Universities, Conferences, and the National Collegiate Athletics Association ("NCAA") with the Cedo Wallet Company as its corporate structure.

20. Cedo Health, Cedo Wallet, and Cedo Tech were formed with members Zilinskas, Miller, and Griffin.

21. Cedo Health was formed with a unique business model to allow for flat, monthly fees to provide medication to consumers by negotiating and entering into agreements that created a lower cost for consumers for medications as well as adding benefits and access to specialty medications.

22. In conjunction with the above business model, the Cedo Companies' strategy involved targeting a unique set of customers with particular needs and/or characteristics.  In particular, the Cedo Companies targeted companies such as for-profit third-party vendors of pharmaceuticals that donated to colleges and universities by providing the

targeted companies with a unique business model that would allow them to provide pharmaceuticals to the public and specifically companies while donating to colleges and universities, and save revenue in excess of the value of the donations to colleges and universities.

23. None of the business model information, and in particular the targeted companies, was publicly available information in that without the knowledge and structure of the Cedo Companies' business model the information would not be readily ascertainable through public resources.

24. In furtherance of the Cedo Companies' business model, the Cedo Companies spent significant time and effort identifying both private companies and colleges and universities that would benefit from the business model that the Cedo Companies had developed.

25. This information, specific to and inconsistent with prior business dealings in the relevant marketplace, could not be developed and used by the public and third parties without the specific business model created by the Cedo Companies, and could therefore not be used to capture a share of the market – which did not exist without the Cedo Companies' model – without access to and knowledge of the Cedo Companies' business model and proprietary information in the identification of and creation of relationships with the targeted customers and other individuals/companies with which the Cedo Companies created business relationships.

26. The above information was known only to the Cedo Companies, and only shared among the officers and owners of the Cedo Companies, including defendant Griffin.

27. Griffin specifically represented, on or about September and October 2023 to the Cedo Companies that he was able to raise one million dollars ($1,000,000.00) or more to fund the commercialization of the Cedo Companies to further the goals and objectives of the Cedo Companies.

28. On the basis of those representations, the Cedo Companies entered into agreements with Griffin to further the business interests of the Cedo Companies.

29. At the time of formation, the ownership and voting interest in Cedo Health were: Miller with 34% ownership and voting interest, Griffin with 33% ownership and voting interest, and Zilinskas with 33% ownership and voting interest.

30. At the time of formation the ownership and voting interest in Cedo Wallet were: Miller with 58% ownership and voting interest, Griffin with 22% ownership and voting interest, and Zilinskas with 20% ownership and voting interest.

31. At the time of formation the ownership and voting interest in Cedo Tech were: Miller with 34% ownership and voting interest, Griffin with 33% ownership and voting interest, and Zilinskas with 33% ownership and voting interest.

32. With the Cedo Companies formed and under the direction and control of Miller and Zilinskas, Miller and Zilinskas obtained investment funding from individuals and other sources.

33. Initially, Griffin was given access and control of financial matters for the Cedo Companies based entirely upon his lies regarding his financial and business history, including his claims of personal wealth and financial acumen running "successful businesses" as well as his representations that he didn't require any financial support due to his personal financial stability. As such, the Cedo Companies, Miller, and

Zilinskas entrusted Griffin with fiduciary duties that Griffin not only had no intention of fulfilling but planned from the outset to financially benefit himself and his wife Guthmiller. Guthmiller is not and never has been a member, officer, owner, employee, and/or agent of any of the Cedo Companies.

34. Immediately after the creation of the Cedo Companies and the influx of capital investments from investors, Griffin began a pattern of behavior that would continue until his removal in late 2023 as a member/managing member of the Cedo Companies. That behavior, the broad scheme of which was to breach the terms of the Operating Agreements for the Cedo Companies and for the embezzlement and misuse of Cedo Companies resources at a time when the Cedo Companies were indebted heavily to investors as well as intentional failure to obtain financial resources and create the business relationships required for the Cedo Companies to operate as planned, included:

    a. Spending Cedo Companies financial resources for personal expenses for himself, Guthmiller, and their children such as paying for sporting equipment and sporting events like Bicycle Motocross (BMX) bicycles, related equipment, and BMX events for their son;

    b. Using his access and control of Cedo Companies financial resources to impermissibly wire money directly to Guthmiller's personal accounts;

    c. Lying to Miller and Zilinskas about the use of corporate funds by claiming that funds were used for charitable purposes when in fact funds were used by him and Guthmiller for personal matters;

d. Refusing to provide accurate record keeping and accounting for the Cedo Companies, including refusing to provide such information to Miller and Zilinskas and redirecting invoices for Cedo Companies money he spent directly to himself to hide his misuse of company funds;

e. Verbal abuse of potential and actual Cedo Companies business partners;

f. Making material misrepresentations to third parties about business matters, including lying to potential vendors about funding available the Cedo Companies and misrepresenting himself as the CEO and sole decision maker of the Cedo Companies;

g. While tasked with producing a Master Service Agreement ("MSA") for Cedo Health so that Cedo Health could contract with clients for the services provided by Cedo Health, Griffin not only failed to handle this duty at all but lied to Miller and Zilinskas about the progress of the task;

h. Refusing to provide the Cedo Companies, Miller, and Zilinskas with copies of contracts, subscription agreements, and other documents evidencing agreements and liabilities that he entered into as an officer of the Cedo Companies;

i. Failing to meet company requirements for meetings and business development;

j. Lying to Miller and Zilinskas about agreements and/or contracts that he claimed to have entered into on behalf of the Cedo Companies when no such agreements and/or contracts existed;

k. Mishandling the hiring and paying with Cedo Companies resources of legal counsel while hiding the mishandling and refusing to provide recordkeeping or explanation for the use of and payment for legal counsel; and

l. Intentionally preventing individuals hired and paid by him with Cedo Companies resources from having any contact or accountability with Miller and Zilinskas despite those individuals ostensibly working on behalf of the Cedo Companies.

35. As of the date of this Complaint, Griffin has failed to account for his activities, including refusing to provide accounting records, justification for his misuse of corporate funds, refusing to provide documents and other information showing his activities and/or memorializing agreements made by him as a member and officer of the Cedo Companies.

36. Griffin has also impermissibly taken and refused to return to the Cedo Companies trade secrets belonging to the Cedo Companies despite repeated demands, namely the business contacts for vendors, investors, etc. that were developed solely by and on behalf of the Cedo Companies and for which the Cedo Companies took reasonable measures to ensure that proprietary information remained confidential (the "Trade Secrets").

37. During his time with the Cedo Companies, Griffin also used the Trade Secrets for his own personal gain and continues to do so, utilizing the information in an attempt to begin and/or operate other business ventures separate from the Cedo Companies.

38. Griffin continues to harass Cedo Companies employees, vendors, investors, and business contacts and to further utilize Plaintiffs' Trade Secrets .

39. Defendant Guthmiller coordinated with and agreed with Griffin to misdirect funds from Plaintiffs to Defendants, utilizing Guthmiller's accounts to hide Plaintiffs' damages.

40. As a consequence of Griffin's and Guthmiller's activities, the Cedo Companies have incurred actual damages in an amount not less than one hundred ninety-three thousand, two-hundred and eighty dollars and sixty-six cents ($193,280.66).

41. Further, unless constrained by the Court, Griffin has been and will continue to withhold and use the Cedo Companies' Trade Secrets against the interests of the Cedo Companies and for his and Guthmiller's personal gain.

## COUNT I

## VIOLATIONS OF THE FEDERAL DEFEND TRADE SECRETS ACT

## 18 U.S.C. § 1836 *et seq*.

42. The allegations of Paragraphs 1-30 are incorporated as though fully reinstated herein.

43. Plaintiffs created proprietary Trade Secrets in its business development; namely the creation of its detailed list, of vendors, business partners, investors, and other contacts.

44. Plaintiffs took reasonable steps to protect those Trade Secrets.

45. Griffin has misappropriated Plaintiffs' Trade Secrets by knowingly and impermissibly obtained and converted for his and Guthmiller's own use Plaintiffs' Trade Secrets.

46. Those actions have harmed and continue to harm Plaintiffs.

47. Griffin continues to withhold and misuse Plaintiffs' Trade Secrets.

## COUNT II

## VIOLATIONS OF THE NEBRASKA TRADE SECRETS ACT (NTSA), NEB. REV. STAT. § 87-501 *et seq*.

48. The allegations of Paragraphs 1-36 are incorporated as though fully restated herein.

49. Plaintiffs created proprietary Trade Secrets in its business development; namely the creation of its detailed list, of vendors, business partners, investors, and other contacts.

50. Plaintiffs took reasonable steps to protect those Trade Secrets.

51. Griffin has knowingly and impermissibly obtained and converted for his and Guthmiller's own use Plaintiffs' Trade Secrets.

52. Those actions have harmed and continue to harm Plaintiffs.

53. Griffin continues to withhold and misuse Plaintiffs' Trade Secrets.

## COUNT III

## BREACH OF FIDUCIARY DUTY AGAINST GRIFFIN

54. The allegations of Paragraphs 1-42 are incorporated as though fully restated herein.

55. Griffin, by and through the Operating Agreements for the Cedo Companies and in his capacity as an officer of the Cedo Companies, owed a fiduciary duty to the Cedo Companies and their other members.

56. By and through his actions above, Griffin has breached his fiduciary duties to Plaintiffs.

57. Plaintiffs have been damaged as a result of Griffin's breaches of his fiduciary duties.

## COUNT IV

## FRAUD IN THE INDUCEMENT AGAINST GRIFFIN

58. The allegations of Paragraphs 1-46 are incorporated as though fully restated herein.

59. Griffin made intentional and knowing misrepresentations of fact to Miller and Zilinskas in order to induce them to enter into the Operating Agreements of the Cedo Companies so that Griffin could obtain access to the financial resources of the Cedo Companies.

60. Miller and Zilinskas as well as the plaintiffs Cedo Companies relied upon those misrepresentations when entering into the Operating Agreements with Griffin.

61. Plaintiffs have been damaged as a result of Griffin's fraudulent inducement to enter into the Operating Agreements.

## COUNT V

## CONSPIRACY AGAINST GRIFFIN AND GUTHMILLER

62. The allegations of Paragraphs 1-50 are incorporated as though fully restated herein.

63. Griffin and Guthmiller agreed to misuse Griffin's position as a member and officer of the Cedo Companies to misappropriate funds belonging to the Cedo Companies and use the funds for their own personal purposes.

64. Griffin, without authority and while taking steps to hide his activities, transferred funds from the Cedo Companies directly to himself and Guthmiller.

65. Guthmiller, as part of the agreement between her and Griffin, used her personal banking accounts as the repository of the funds transferred out of the Cedo Companies by Griffin.

66. By and through the actions alleged herein, Griffin and Guthmiller combined to accomplish by concerted action an unlawful and/or oppressive object; namely the conversion of money from the Cedo Companies to their own personal use.

67. Plaintiffs have been damaged as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court:

68. Enter judgment in favor of Plaintiffs.

69. Award Plaintiffs actual damages to be proven at trial.

70. Award Plaintiffs punitive damages.

71. Award Plaintiffs attorneys fees and costs.

72. Enter a permanent injunction enjoining Defendants from the acts complained of herein.

73. Other such relief as the Court may deem proper.

JURY TRIAL DEMANDED

April 19, 2024

/s/ Duncan G. Byers
_____
Duncan G. Byers, Esq. (VSB No. 48146)
BYERS LAW
1769 Jamestown Road, Suite 120
Williamsburg, VA  23185
Telephone:     757.317.2779
Facsimile:      757.231.3797
dbyers@dbyerslaw.com
*Counsel for the Plaintiffs,*
*Member of the Bar of this Court*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing Amended Complaint was filed with the Court's CM/ECF System on April 19, 2024, which system automatically generates service upon the following counsel of record:

DAVID GRIFFIN and CAREY LEE GRIFFIN, Defendants,
By /s/ *Andrew M. Collins*
Andrew M. Collins, #24018
Bonnie M. Boryca, #24886
ERICKSON | SEDERSTROM, P.C.
Regency Westpointe, Suite 100
10330 Regency Parkway Drive
Omaha, Nebraska 68114
(402) 397-2200
collins@eslaw.com
boryca@eslaw.com
counsel for Defendants