## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

CEDO HEALTH, LLC,                                                    **Case No. 24-29**

CEDO WALLET, LLC,

    and

CEDO WALLET TECHNOLOGIES, LLC

v.

DAVID GRIFFIN,

    and

CAREY LEE GUTHMILLER

## **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'**

## **FIRST AMENDED COMPLAINT**

COME NOW Plaintiffs, Cedo Health, LLC ("Cedo Health"), Cedo Wallet, LLC ("Cedo Health"), and Cedo Wallet Technologies, LLC ("Cedo Tech") (collectively the "Cedo Companies"), pursuant to Fed. R. Civ. P. 15(a)(1)(b) and for their Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint  state as follows:

### I.        BACKGROUND

Plaintiffs brought this matter on their Amended Complaint (Dkt. 18) for claims against Defendants David Griffin ("Griffin") and Carey Lee Guthmiller ("Guthmiller"), Griffin's spouse (collectively "Defendants") for:  I. Violations of the Federal Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 *et seq*. (against Griffin); II. Violations of the Nebraska Trade Secrets Act (NTSA), Neb. Rev. Stat. § 87-501 *et seq*. (against Griffin); III. Breach of Fiduciary Duty (against Griffin); IV. Fraud in the Inducement (against Griffin); and V. Conspiracy (against both

Defendants).  Defendants filed their Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 19) and Brief in Support (Dkt. 20) on May 3, 2024 seeking to have the Court dismiss Claims I, II, IV and V but not Claim III.

The claims arise out of Griffin's actions as a member and officer of the plaintiff companies, and Guthmiller's actions in combination with Griffin to accept and use money belonging to Plaintiffs.

## II.    LEGAL STANDARDS

### A.  General

Plaintiffs agree with Defendants' Standard of Review (Dkt. 20, pp. 2-3) in general when the Court is reviewing and deciding on a Fed. R. 12(b)(6) motion to dismiss.

### B.  Violation of the Federal DTSA.

A "trade secret" is information "the owner thereof has taken reasonable measures to keep such information secret" and that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).  "Misappropriation" requires the "disclosure or use of a trade secret of another without express or implied consent" by someone who "at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(III).

### C.  Violation of the NTSA.

To allege a violation of the NTSA, a party must plead the existence of such a trade secret

and also that the trade secret was misappropriated by the defendants. Neb. Rev. Stat. § 87-504. Nebraska law defines misappropriation to include the "[d]isclosure or use of a trade secret without express or implied consent" where the person "used improper means to acquire knowledge of the trade secret" or "knew or had reason to know that [their] knowledge of the trade secret" was improperly acquired or utilized in some manner. Neb. Rev. Stat. § 87-502.

### D.  Fraud in the Inducement.

"[A] complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).

### E.  Conspiracy.

A civil conspiracy is actionable if the alleged conspirators actually committed some underlying misconduct. A conspiracy is not a separate and independent tort in itself; rather, it depends upon the existence of an underlying tort. Without such underlying tort, there can be no cause of action for a conspiracy to commit the tort.  It is not necessary to prove an express agreement but at least the existence of an implied agreement. *See, e.g., Ashby v. State*, 279 Neb. 509, 526 - 27, 779 N.W.2d 343, 357 (2010).

### III.   ARGUMENT

### A.  Plaintiffs Have Alleged Sufficient Facts to Support Their Claims for Violations of the federal DTSA and the NTSA.

As a first matter, Defendants have provided "no support in Nebraska [or federal] law for their assertion that a more specific description of [Plaintiffs'] trade secret is necessary at this early stage, especially given that he Court's touchstone in considering a motion to dismiss is notice."

*Aksarben Property Management, LLC v. Vertical Focus*, LLC, 2023 WL 6124791, *5 (D.NE September 19, 2023) (internal citations omitted).

Defendants cherry-pick language from *Home Pride Foods, Inc. v. Johnson*, 262 Neb. 701, 782 (Neb. 2001) for the proposition that the trade secrets owned by Plaintiffs aren't even "customer lists" and therefore are "readily ascertainable through public sources." Dkt. 20, pp. 6-7. Defendants however ignore the fact that Plaintiffs specify in some detail (although not required at this stage of the proceedings) the efforts expended in creating the trade secret information. Dkt. 18 at ¶¶s 21-26. Such efforts fall under the analysis in Home Pride Foods that Defendants ignore: "where time and effort have been expended to identify particular customers with particular needs or characteristics," *Home Pride Foods*, 262 Neb. at 782. Further, the Eighth Circuit has also determined that such information qualifies as trade secrets when it is "valuable, not because of the quantum of secret information, but because the expenditure of time, effort, and expense involved in its compilation gives a business a competitive advantage." *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 972 (8th Cir. 2011).

As to Defendants' assertion that "Plaintiffs failed to allege how they identified the targeted companies," (Dkt. 20, p. 8), a review of the Amended Complaint clearly shows the details that Defendants argue are not there. Paragraphs 21 - 26 state specifically that "Cedo Health was formed with a unique business model to allow for flat, monthly fees to provide medication to consumers by negotiating and entering into agreements that created a lower cost for consumers for medications as well as adding benefits and access to specialty medications Dkt. 18, ¶ 21, that "[i]n conjunction with the above business model, the Cedo Companies' strategy involved targeting a unique set of customers with particular needs and/or characteristics. In particular, the Cedo Companies targeted companies such as for-profit third-party vendors of pharmaceuticals that

donated to colleges and universities by providing the targeted companies with a unique business model that would allow them to provide pharmaceuticals to the public and specifically companies while donating to colleges and universities, and save revenue in excess of the value of the donations to colleges and universities," Dkt. 18, ¶ 22, that "[n]one of the business model information, and in particular the targeted companies, was publicly available information in that without the knowledge and structure of the Cedo Companies' business model the information would not be readily ascertainable through public resources," Dkt. 18, ¶ 23, that "[i]n furtherance of the Cedo Companies' business model, the Cedo Companies spent significant time and effort identifying both private companies and colleges and universities that would benefit from the business model that the Cedo Companies had developed," Dkt. 18, ¶ 24, "[t]his information, specific to and inconsistent with prior business dealings in the relevant marketplace, could not be developed and used by the public and third parties without the specific business model created by the Cedo Companies, and could therefore not be used to capture a share of the market – which did not exist without the Cedo Companies' model – without access to and knowledge of the Cedo Companies' business model and proprietary information in the identification of and creation of relationships with the targeted customers and other individuals/companies with which the Cedo Companies created business relationships, Dkt. 18, ¶ 25, and finally that "[t]he above information was known only to the Cedo Companies, and only shared among the officers and owners of the Cedo Companies, including defendant Griffin."  Dkt. 18, ¶ 26.

Ultimately, therefore, Defendants' principal complaint is that Plaintiffs did not provide the "more specific description of [Plaintiffs'] trade secret" that is not required at this early stage. *Aksarben*, 2023 WL 6124791 at *5.

Defendants do not dispute that Plaintiffs have sufficiently pled that Griffin "at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret," 18 U.S.C. § 1839(5)(B)(ii)(III), and/or he "knew or had reason to know that [their] knowledge of the trade secret" was improperly acquired or utilized in some manner. Neb. Rev. Stat. § 87-502.  Likely because they cannot; as a corporate officer under Nebraska law, Griffin was a fiduciary of Plaintiffs at the time he obtained and misappropriated their trade secrets.  "During his time with the Cedo Companies, Griffin also used the Trade Secrets for his own personal gain and continues to do so, utilizing the information in an attempt to begin and/or operate other business ventures separate from the Cedo Companies."  *See, e.g., Aon Consulting, Inc. v. Midlands Financial Benefits, Inc.*, 275 Neb. 642, 662, 748 N.W.2d 626, 643-44 (Neb. 2008) (holding that a breach of fiduciary duty occurs while a defendant is an officer as the duty ceases to exist once the defendant is no longer an officer).

Plaintiffs contend that they have sufficiently pled facts to support their claims for violations of the federal DTSA and the NTSA.

**B. Plaintiffs Have Alleged Facts Sufficient to Support Their Claim for Fraud in the Inducement Against Griffin.**

Defendants argue that Plaintiffs have failed to properly plead their claim for fraud in the inducement in that "Plaintiffs have not pleaded their fraud claim with sufficient particularity to meet Nebraska pleading standards."  Dkt. 20, p. 9.  First, Defendants claim that the statements relied upon by Plaintiffs were "mere 'sales talk'" or "puffing,"  Dkt. 20, p. 10, rather than statements of fact.  That is incorrect.  First, Plaintiffs relied upon specific representations by Griffin as to his contacts, experience, and skills.  "Griffin represented to the Cedo Companies' other

officers Shane Zalinski and Keith that he had particular experience with college sports – one large targeted group of potential clients for the Cedo Companies' with particular needs met by the Cedo Companies' technology and business model – in that he had played college sports and had specific contacts within that potential client community. He represented to Plaintiffs that he had been part of the Arizona State University roster for football.  In reality, Griffin not only did not have any such experience, but he had never even played sports in college." Dkt. 18, ¶¶s 17-18.  These representations were relied upon by Plaintiffs in that those lies about his contacts, experience, and skills went directly to Plaintiffs' business model and plan in that "[a]t the outset, the Cedo Companies were intended start with a Name, Image, and Likeness ("NIL") tracking platform for transactions of college athletes obtaining endorsement contracts and providing means for reporting those endorsements to the athletes' home Universities, Conferences, and the National Collegiate Athletics Association ("NCAA") with the Cedo Wallet Company as its corporate structure."  Dkt. 18, ¶ 19.

Defendants also argue that the representations were made to Miller and Zilinskas, "non-parties to this action." Dkt. 20, p. 10.  That argument is a straw man; Miller and Zilinskas are the other members and officers of the Cedo Companies.  Plaintiffs are not sure, exactly, who the representations would have otherwise been made to, and the Court should disregard this diversion.

Defendants' argument that the "agreements are not specifically identified or described" (Dkt. 20, p. 10) is similarly hollow as is their argument that Plaintiffs failed to allege that they are parties to the agreements.  The plaintiff companies are identified as limited liability companies (Case style and Dkt. 18, ¶¶s 1-3) with three members:  Zilinskas, Miller, and Griffin. Dkt. 18, ¶ 20.  Each of the Cedo Companies, as LLCs, by law have operating agreements (Dkt. 18, ¶ 34). And if Defendants wish to be provided with the details of the operating agreements (that Griffin

should have as he is a party) the proper mechanism is not through a motion to dismiss but possibly a motion for a more definite statement or more properly through discovery.

### C. Plaintiffs Have Pled Facts Sufficient to Support Their Claim for Conspiracy

Defendants arguments that Plaintiffs' claim for civil conspiracy must fail (incorporated by reference from their Brief in support of their Motion to Dismiss (Dkts. 16 and 17) Plaintiffs' Complaint (Dkt. 1).  In that Brief, Defendants simply argued that "[t]he Complaint contains no specific factual allegations of an express or implied agreement between [Defendants]," Dkt. 17, p. 12, and that Plaintiffs simply used a recitation of the elements of the cause of action for conspiracy.  As noted *supra*, a civil conspiracy is actionable if the alleged conspirators actually committed some underlying misconduct. A conspiracy is not a separate and independent tort in itself; rather, it depends upon the existence of an underlying tort. It is not necessary to prove an express agreement but at least the existence of an implied agreement. *Ashby v. State*, 279 Neb. 509, 526 - 27, 779 N.W.2d 343, 357 (2010).

As a first matter, the underlying tort – Griffin's breach of his fiduciary duty to Plaintiffs (Dkt. 18, Count III) – has been conceded for the purposes of their Motion to Dismiss by Defendants in that they have failed to ask the Court to dismiss that Count.

The Amended Complaint also sufficiently pleads facts to show the existence of at least an implied agreement between Defendants.  Griffin's conspiracy with his wife included "[s]pending Cedo Companies financial resources for personal expenses for himself, Guthmiller, and their children such as paying for sporting equipment and sporting events like Bicycle Motocross (BMX) bicycles, related equipment, and BMX events for their son;" (Dkt. 18, ¶ 34(a)),  "[u]sing his access and control of Cedo Companies financial resources to impermissibly wire money directly to Guthmiller's personal accounts;" (Dkt. 18, ¶ 34(b)), and "[l]ying to Miller and Zilinskas about the

use of corporate funds by claiming that funds were used for charitable purposes when in fact funds were used by him and Guthmiller for personal matters" (Dkt. 18, ¶ 34(c)). Further, "[d]efendant Guthmiller coordinated with and agreed with Griffin to misdirect funds from Plaintiffs to Defendants, utilizing Guthmiller's accounts to hide Plaintiffs' damages," Dkt. 18, ¶ 39. Plaintiffs further alleged that "Griffin, without authority and while taking steps to hide his activities, transferred funds from the Cedo Companies directly to himself and Guthmiller" and "Guthmiller, as part of the agreement between her and Griffin, used her personal banking accounts as the repository of the funds transferred out of the Cedo Companies by Griffin."  Dkt. 18, ¶¶s 64-5.

It is clear from the above that Plaintiffs' Amended Complaint does not simply rely upon a formulaic recitation of the elements of a claim for conspiracy.

## IV.    CONCLUSION

For reasons stated herein, Plaintiffs respectfully submit that Defendants' Motion to Dismiss is without merit and should be denied.


Respectfully submitted,

May 24, 2024

<div style="margin-left:40%">

/s/ Duncan G. Byers
Duncan G. Byers, Esq. (VSB No. 48146)
BYERS LAW
1769 Jamestown Road, Suite 120
Williamsburg, VA  23185
Telephone:    757.317.2779
Facsimile:     757.231.3797
dbyers@dbyerslaw.com
*Counsel for the Plaintiffs,*
*Member of the Bar of this Court*

</div>

**CERTIFICATE OF COMPLIANCE**

In accordance with Local Rule 7.1(d)(3), the undersigned certifies that the foregoing complies with the word limits of Local Rule (d)(1) including all text. This brief contains a total of 2,512 words including text, caption, headings, footnotes, and quotations as calculated by Microsoft Word 365.

/s/ Duncan G. Byers

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint was filed with the Court's CM/ECF System on May 24, 2024, which system automatically generates service upon the following counsel of record:

Andrew M. Collins, #24018
Bonnie M. Boryca, #24886
ERICKSON | SEDERSTROM, P.C.
Regency Westpointe, Suite 100
10330 Regency Parkway Drive
Omaha, Nebraska 68114
(402) 397-2200
collins@eslaw.com
boryca@eslaw.com
*Counsel for Defendants*